## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **BENJAMIN GODWIN SWANSON,** | ) | |
| **#34056-058,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 24-cv-02705-JPG** |
| | ) | |
| **RONALD LANG,** | ) | |
| **DANIEL HUGGINS,** | ) | |
| **SHANNON WALLACE,** | ) | |
| **T. JOHNSON, and USA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**GILBERT, District Judge:**

Plaintiff Benjamin Swanson, an inmate in the custody of the Federal Bureau of Prisons (FBOP), brings this action pursuant to the Federal Tort Claims Acts (FTCA), 28 U.S.C. §§ 1346, 2671-2680, 28 U.S.C. § 1331, and *Bivens v. Six Unknown Named Agents of Fed'l Bureau of Narcotics*, 403 U.S. 388 (1971). (Doc. 1). In the Complaint, Plaintiff claims he was targeted for retaliation after he refused a job assignment at the United States Penitentiary in Marion, Illinois (USP-Marion).[1] *Id*. at 1-25. He seeks monetary and injunctive relief.[2] *Id*. The Complaint is subject to review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints and filter out any portion that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant. 28 U.S.C. § 1915A(a)-(b).

---

[1] This prison was reclassified as a federal correctional institution after the events giving rise to Plaintiff's Complaint. For purposes of this Order, the Court will refer to the facility as "USP-Marion."

[2] Plaintiff's request for injunctive relief as it pertains to the conditions of his confinement at USP-Marion may be moot. He is now housed at the Federal Correctional Institution in McKean, Pennsylvania, and he describes no plans to return to USP-Marion.

**The Complaint**

Plaintiff sets forth the following allegations in the Complaint (Doc. 1, pp. 1-25): Defendants retaliated against Plaintiff after he refused to work for Officer Lang as an indoor recreation clerk at USP-Marion. *Id*. at 9. Plaintiff was repeatedly offered this job over the course of two years because he was generally considered responsible, reliable, and loyal. He was not required to take the job, however, and he declined the offer because he feared arbitrary termination. This upset Officer Lang. *Id*.

In response, Lang encouraged other officers to mock, tease, bully, harass, and play "mind games" with Plaintiff. *Id*. On one occasion, Lieutenant Huggins called Plaintiff over to where he and Lang were standing and laughing like "school girl[s]." *Id*. Huggins asked Plaintiff, "Who runs this compound?" When Plaintiff said that the warden runs it, Huggins laughed and told Lang, "See?! I told you Swanson wouldn't say it was you." *Id*. at 10. Lang threatened to have Plaintiff's pay docked for a month, if he did not amend his answer and say that Lang ran the compound. *Id*. At the same time, Huggins ordered Plaintiff to submit to hand restraints and threatened him with placement for a month in the special housing unit. *Id*. Plaintiff began crying. He begged the officers not to reduce his pay or send him to the special housing unit because he had been sexually assaulted there. *Id*. Plaintiff agreed to say that Lang runs the compound. *Id*. Huggins and Lang then released Plaintiff back into the general population. *Id*. When pressed, Officer Lang acknowledged that Plaintiff was a "good worker" and said he "was only joking" with Plaintiff. *Id*. The teasing caused Plaintiff to develop anxiety and depression. *Id*.

When Plaintiff again refused the job offer on January 26, 2023, Defendants Lang, Johnson, Huggins, and Wallace took revenge. *Id*. They worked together to falsely frame him for possessing staff clothing. *Id*. at 10. Lang instructed Johnson to retrieve an approved gray work vest from

2

Plaintiff's cell.  *Id.*  Huggins was the shift supervisor at the time.  *Id.*  The officers then transferred Plaintiff to the special housing unit while they investigated, and Johnson took non-contraband personal property from his cell and gave it away to other inmates who claimed to be in charge of Plaintiff.  *Id.*  Johnson gave away personal property worth $405.20.  *Id.* at 11.

Plaintiff was then issued a disciplinary ticket for possession of the vest.  Officer Wallace presided over the disciplinary hearing on February 10, 2023, regarding Inmate Disciplinary Report #3726377 issued January 26, 2023.  *Id.*  In the presence of two inmate representatives, Wallace said, "I know you're innocent Swanson, but I was told to find you guilty no matter what.  We (Huggins & Lang) spent a lot of time to get you back for being annoying." *Id.* at 11.  Following a denial of due process at the disciplinary hearing, Plaintiff was released back into the general population.  *Id.*  He does not indicate what decision was reached, what punishment was given, whether he served time in segregation/SHU, or the length of time he remained there.  *Id.*

Following his release back into the general population, Huggins told Swanson that he was not allowed to work in the recreation area ever again.  *Id.*  When Swanson asked Huggins where his property went, Huggins said, "Tort claim it."  *Id.*  Plaintiff then filed administrative remedy requests and a tort claim.  *Id.*  He now seeks compensation for his personal property ($405.20) under the FTCA and money damages for violations of his rights under the First, Fifth, Eighth, and Fourteenth Amendments.  *Id.*  In addition, he seeks expungement of his ticket, staff discipline, and a written apology from the staff at USP-Marion.  *Id.*

## Discussion

The Court designates the following four counts in the *pro se* Complaint:

Count 1:    FTCA claim against the United States for the negligent, wrongful, or intentional loss of Plaintiff's personal property worth $405.20 by Lang, Huggins, Wallace, and Johnson during his housing transfer on or around January 26, 2023.

**Count 2:**    First Amendment claim against Lang, Huggins, Wallace, and Johnson for retaliating against Plaintiff by issuing him a false disciplinary ticket for unlawful possession of a staff vest after he refused to work for Lang on January 26, 2023.

**Count 3:**    Fifth Amendment claim against Lang, Huggins, Wallace, and Johnson for issuing Plaintiff a false disciplinary ticket for possession of a staff vest on January 26, 2023 and denying him due process of law at a disciplinary hearing on February 10, 2023.

**Count 4:**    Eighth Amendment claim against Lang and Huggins for verbally harassing Plaintiff, cuffing him up, and threatening to or actually placing him in SHU for no penological reason on an undisclosed date, causing him to develop anxiety and depression.

**Any other claim mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.[3]**

### Count 1

Count 1 arises under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-2680, which authorizes "civil actions on claims against the United States, for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Plaintiff claims that USP-Marion officials negligently or intentionally lost his non-contraband personal property worth $405.20 while transferring him between the general population and special housing unit.

When enacting the FTCA, Congress waived the sovereign immunity of the United States for suits alleging injury, including property loss, resulting from the negligence of federal employees acting within the scope of their employment. *See Abdulqader v. United States*, 596 F.

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face.").

App'x 515, 516 (7th Cir. 2015) (citing 28 U.S.C. §§ 1346(b)(1), 2671-2680).  However, in *Ali v. Federal Bureau of Prisons*, 552 U.S. 214 (2008), the United States Supreme Court held that claims involving the negligent handling of detained property by law enforcement, including FBOP prison guards, are excluded from this waiver under § 2680(c).  *Id*. at 216, 228.  Since then, both the United States Supreme Court and the Seventh Circuit Court of Appeals have held that sovereign immunity bars an inmate's claim for lost or mishandled personal property by FBOP officers during a prison transfer.  *Ali*, 552 U.S. at 216-17; *Abdulqader*, 596 F. App'x at 516.  Count 1 is a claim against the United States arising from FBOP officers' alleged mishandling of Plaintiff's personal property while transferring him.  This claim cannot proceed under the FTCA, and Count 1 shall be dismissed with prejudice for failure to state a claim.

### Counts 2 through 4

Plaintiff brings three constitutional claims against the individual federal officers under the First Amendment (Count 2), Fifth Amendment (Count 3), and Eighth Amendment (Count 4). These claims are brought pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 392 (1971).

The Supreme Court first recognized an implied damages remedy against individual federal officers for violations of the Fourth Amendment prohibition against unreasonable searches and seizures in *Bivens*, 403 U.S. at 392.  The Supreme Court extended this remedy to a Fifth Amendment claim of gender discrimination in *Davis v. Passman*, 442 U.S. 228 (1979), and an Eighth Amendment claim of medical deliberate indifference in *Carlson v. Green*, 446 U.S. 14 (1980).  The Court has otherwise declined to extend this implied damages remedy into any new contexts and made it clear that all further expansion of the implied damages remedy is strongly disfavored.  *Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017).

More recently, in *Egbert v. Boule*, 596 U.S. 482 (2022), the Supreme Court instructed district courts presented with any *Bivens*-type claim to decide whether the claim meaningfully differs from the three claims previously recognized by the Supreme Court. *Egbert*, 596 U.S. at 492. A district court must also consider whether "special factors" counsel hesitation in expanding this remedy into a new context without congressional action. *Id*. This analysis boils down to the question of whether there is any reason to think that Congress is in a better position to create a damages remedy. *Id*. Typically, the answer is that Congress is in the better position. *Id*.

Counts 2 and 3 involve claims arising in different contexts than those presented in *Bivens*, *Davis*, and *Carlson*. The First Amendment retaliation claim (Count 2) and Fifth Amendment disciplinary due process claim (Count 3) are unlike the Fourth Amendment excessive force claim in *Bivens*, Fifth Amendment gender discrimination claim in *Davis*, and Eighth Amendment medical deliberate indifference claim in *Carlson*. Moreover, Plaintiff had access to an alternative remedy for addressing these claims. He could, and allegedly did, use the FBOP's administrative remedies' process to grieve the issues. The existence of this remedial process, alone, counsels against expansion of the *Bivens* remedy to cover Plaintiff's claims. Congress is in a better position to create any additional remedy for these claims. Given this, Counts 2 and 3 shall be dismissed with prejudice for failure to state a claim.

However, the Eighth Amendment claim in Count 4 against Lang and Huggins for using verbal harassment and excessive force against Plaintiff and causing him to develop anxiety and depression will be allowed to proceed for now. This claim overlaps with the Fourth Amendment excessive force claim in *Bivens* and the Eighth Amendment medical deliberate indifference claim in *Carlson*. Further consideration and/or briefing is necessary before the Court can determine whether dismissal is warranted. Therefore, Count 4 shall proceed past screening. In connection

with this claim, Plaintiff seeks money damages, staff discipline, and/or written apologies. These requests for relief are also subject to further review under 28 U.S.C. § 1331 and/or *Bivens* and its progeny.

### Disposition

The Complaint (Doc. 1) survives screening under 28 U.S.C. § 1915A, as follows: **COUNT 4** will receive further review against Defendants **RONALD LANG** and **DANIEL HUGGINS**, in their individual capacities.

However, **COUNTS 1, 2,** and **3** are **DISMISSED** with prejudice. Defendant **UNITED STATES** is **DISMISSED** with prejudice, and Defendants **SHANNON WALLACE** and **T. JOHNSON** are **DISMISSED** without prejudice.

**The Clerk of Court is DIRECTED to TERMINATE the UNITED STATES, SHANNON WALLACE, and T. JOHNSON as defendants in CM/ECF and ENTER the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

Further, the Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **RONALD LANG** and **DANIEL HUGGINS**; the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve Defendants **RONALD LANG** and **DANIEL HUGGINS** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure. Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint

7

to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process." All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

It is **FURTHER ORDERED** that Plaintiff shall serve upon Defendants, or if an appearance has been entered by counsel, upon that attorney, a copy of every pleading or other document submitted for consideration by this Court. Plaintiff shall include with the original paper to be filed a certificate stating the date that a true and correct copy of the document was mailed to defendant or counsel. Any paper received by a district judge or a magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded.

Defendants are **ORDERED** to timely file appropriate responsive pleadings to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants should only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured herein shall be paid to the Clerk, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. SDIL-LR 3.1(c)(1).

8

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED**.

**DATED: 3/13/2025**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**

### <u>Notice to Plaintiff</u>

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve the defendants with a copy of your Complaint. After service has been achieved, the defendants will enter an appearance and file an Answer. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When the defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel files a notice of appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**